J-A28030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SUZANNE KEIR YURK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE RUSSELL HUFFMAN, III | |
| Appellant | No. 557 EDA 2014 |

Appeal from the Order Entered January 28, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No.: 2007-10300 Pacses No. 052109203

| | |
|---|---|
| SUZANNE KEIR YURK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GEORGE RUSSELL HUFFMAN, III | |
| Appellee | No. 647 EDA 2014 |

Appeal from the Order Entered January 28, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No.: 2007-10300 Pacses No. 052109203

BEFORE: GANTMAN, P.J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.: **FILED JANUARY 07, 2015**

George Huffman, III ("Father") appeals the January 28, 2014 order that revised the October 22, 2013 order setting Husband's child support obligation. Suzanne Yurk ("Mother") cross-appeals the same order. After

careful review, we reverse in part, affirm in part, and we remand for further proceedings.

Mother and Father married on May 9, 1998. They have two children, M.H., born in January 2003, and R.H., born in November 2004. On May 1, 2007, Mother filed for divorce. The trial court entered an interim support order on September 20, 2007. After the initial order, both parties filed petitions to modify support. Most recently, the parties were subject to a December 15, 2010 modification of a prior order. That December 15 order increased Father's support obligation by $1,500 per month to cover "child care and unreimbursed medical and extraordinary expenses." Order, 12/15/2010, at 1. Mother filed a petition to modify support on October 7, 2011. Following a hearing on January 5, 2012, the master issued a proposed order that was filed on July 3, 2012.

The trial court provided the following summary of the procedural history:

> On July 16, 2012 and July 17, 2012, the parties filed cross-exceptions in support from the Master's recommendation . . . . Thereafter, on September 9, 2013, [the trial court] held a protracted hearing on the parties' cross[-]exceptions and issued a Support Order on October 22, 2013. Subsequently, on November 1, 2013, Father filed a Motion for Reconsideration from [the trial court's] October 22, 2013 Order and on November 12, 2013, Mother subsequently filed a Motion for Reconsideration. Accordingly, [the trial court] issued an Order on January 28, 2014 based on the parties' reconsideration motions.

Trial Court Opinion ("T.C.O."), 5/8/2014, at 1-2.

On February 3, 2014, Father filed a notice of appeal, which was docketed at 557 EDA 2014. On February 25, 2014, Mother filed a cross-appeal, which was docketed at 647 EDA 2014. The trial court ordered, and Father and Mother timely filed, concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued two Pa.R.A.P. 1925(a) opinions.

Father presents the following issues for our review:

1. Did the trial court abuse its discretion in failing to appropriately apply the Pennsylvania Support Guidelines outlined at Pa.R.C.P. 1910.16-3, 1910.16-3.1 and 1910.16.4?

2. Did the trial court abuse its discretion in requiring Father to contribute to Mother's share of the children's additional expenses when those additional expense[s] had already been paid in proportion to the parties' income?

Father's Brief at 17.

Mother raises the following issues in her cross-appeal:

1. Did the trial court err in determining the amount of [Father's] child support obligation by failing to properly determine [Father's] income available for support?

   a. Specifically, did the trial court fail to properly determine [Father's] income available for support by considering only [Father's] paystubs and ignoring his business income listed on his income tax returns?

2. Did the trial court err in failing to order [Father] to pay [Mother] the proper percentage of [Father's] various employment bonuses she was entitled to receive during the relevant period?

3. Did the trial court err in continuing to enforce (both during the relevant period and on an ongoing basis) the court's December 2010 Order which capped [Father's] responsibility

for additional expenses on behalf of the parties' two children at $1,500 per month?

    a. Did the trial court err, as a matter of law, in refusing to modify the December 2010 Order because it is inconsistent with the Pennsylvania Rules of Civil Procedure which provide that Child Support is always modifiable?

    b. Did the trial court err, as a matter of law, in refusing to modify the December 2010 Order because it is inconsistent with the Pennsylvania Rules of Civil Procedure which provide for allocation of certain expenses including child care and camp tuition in proportion to the parties' net incomes?

    c. Did the trial court err, as a matter of fact, in ignoring the overwhelming evidence which clearly demonstrated that the $1,500 monthly supplemental payment did not adequately cover [Father's] proportional responsibility for expenses beyond basic support?

4. Did the trial court err in refusing to grant [Mother's] request for an increase in [Father's] basic child support obligation (both during the relevant time period and on an ongoing basis) based on the fact that [Father] bears a disproportionate share of the relative custody of the parties' two children?

5. Did the trial court err in refusing to grant [Mother's] request for a deviation to increase [Father's] basic child support obligation based on: the unusual needs and fixed obligations of Mother; the relative assets of the parties; the standard of living of the parties and their children; and other relevant and appropriate factors including the best interests of the children?

Mother's Brief at 2-4 (capitalization modified).

We review a child support order for a clear abuse of discretion. *Isralsky v. Isralsky*, 824 A.2d 1178, 1186 (Pa. Super. 2003). An abuse of discretion is a misapplication of the law or an unreasonable exercise in

judgment. ***Id.*** A child support order also may be disturbed if the appellate court finds that the trial court failed to consider properly the requirements of the child support guidelines. ***Ball v. Minnick***, 648 A.2d 1192, 1196 (Pa. 1994).

We treat the parties' issues out of order to group like issues together. We begin with Mother's first two issues because they both address the calculation of child support obligations and Father's income available for child support purposes and are governed by the same rule. In her first two issues, Mother claims that the trial court failed to determine properly Father's income. Specifically, she asserts that the trial court ignored Father's business income. Mother contends that the trial court used Father's paystubs to determine his monthly income and did not include other income that appeared in his W-2 forms and tax returns, including capital gains, salary from his corporation, profit sharing, and other benefits. Mother's Brief at 14-17. Mother also alleges that Father received bonuses that he failed to disclose and that the trial court failed to include in its calculation of Father's income. ***Id.*** at 17-18.

Here, the trial court stated that it had derived Father's net monthly income from Father's 2012 year-end paycheck stubs, but did not consider Father's corporate salary, stating that "Father's salary from corporation, pension/profit sharing and employee benefits . . . is not income under Pa.R.C.P. 1910.16-2(a)." T.C.O., 5/8/2014, at 4-5. The trial court erred.

"When determining income available for child support, the court must consider all forms of income." **Arbet v. Arbet**, 863 A.2d 34, 40 (Pa. Super. 2004) (quoting **MacKinley v. Messerschmidt**, 814 A.2d 680, 681 (Pa. Super. 2002)).  Income for the purposes of child support is defined as:

> [C]ompensation for services, including, but not limited to, wages, **salaries**, **bonuses**, fees, compensation in kind, commissions and similar items; **income derived from business**; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302 (emphasis added).  A trial court is required to calculate income using, but not limited to: wages, salaries, bonuses, fees, commissions, net income from business, and dividends.  Pa.R.C.P. 1910.16-2(a).  Thus, a salary from a corporation constitutes income for child support purposes.  **Heisy v. Heisy**, 633 A.2d 211, 212 (Pa. Super. 1993).  Further, our Supreme Court has held that "a court must make a thorough appraisal of the husband-father's actual earnings and perquisites, and the true nature and extent of his property and financial resources," and that "[p]ersonal perquisites, such as entertainment and personal automobile expenses paid

- 6 -

by a party's business must be included in income." **Mascaro v. Mascaro**, 803 A.2d 1186, 1194 (Pa. 2002) (quoting **Labar v. Labar**, 731 A.2d 1252 (Pa. 1999); **Heisey**, 633 A.2d at 212).

The trial court only used Father's paystubs to calculate his income. T.C.O., 5/8/2014, at 4-5. However, Father testified that he received a salary from his corporation that reflected fees earned from, among other things, providing advice on product development, lecturing and teaching, and providing expert witness testimony. Notes of Testimony ("N.T."), 9/9/2013 at 134-35. Father submitted a W-2 from his corporation reflecting a salary of $20,000 in 2012. Exh. R-2. Because the trial court only used Father's paystubs from the University of Pennsylvania, this income was not included. Pursuant to the statute and our case law, it should have been. The trial court erred in not including it, and we must remand for a re-calculation of Father's income and subsequent determination of his support obligation.

Mother also claims that the trial court should have included as income capital gains, a pension/profit sharing plan, and employment benefits. As noted, *supra*, these also should be included in income for calculation of a support obligation. However, our review of the record discloses that in the *de novo* hearing neither Mother nor Father provided any evidence of these

types of benefits. The trial court could not include in income what was not before it.[1]

Finally, by calculating Father's child support obligation by using his year-end paystubs, the trial court factored any bonuses that he received into its support calculation. Father testified that his bonuses were included both in his paystubs, which the trial court used to calculate Father's child support obligations, and in his W-2 from the University of Pennsylvania. N.T., 9/9/2013, at 181. Mother provided no evidence to the contrary. Therefore, we find no additional error in this regard.

We now turn to Father's issues. First, Father contends that the trial court failed properly to apply the child support guidelines to establish his child support obligation. Father does not contest the trial court's findings regarding the parties' incomes. Instead, he asserts that the trial court misapplied the formula for determining child support based upon those incomes. Father outlines the calculations that he believes are correct in detail in his brief. Father's Brief at 23-27. Because we are required to remand for a re-calculation of the support obligation, this issue is moot.

---

[1]   Father's 2012 income tax return shows a capital loss, not a gain. Exh. R-4. While Father's paystubs, Exh. R-5, show deductions for various items, there was no testimony to explain what these deductions were for and whether they were the type of employment benefits that should be included in income for support.

Once the trial court correctly determines Father's income, it will apply the rules to recalculate his support obligation.

Next, Father claims that the trial court abused its discretion by ordering him to contribute to Mother's share of the children's additional expenses. Father disputes three separate payments. First, Father argues that for January 2012, he paid his share of R.H.'s private school tuition and the court also ordered him to pay 83% of the amount that Mother had contributed to the tuition. Similarly, in August 2012, Father asserts that he paid his share of the tuition and the court ordered Father to pay 87% of Mother's share as well. Finally, Father claims that he was ordered to pay 83% of the $500 that Mother paid for summer camp, which should have been covered by the additional $1,500 per month that he pays. Father's Brief at 27-29.

Rule 1910.16-6 provides for an adjustment to the basic child support obligation for additional expenses. Reasonable child care expenses, when necessary to maintain employment, are to be allocated between the parties based upon their incomes. Pa.R.C.P. 1910.16-6(a). Additionally, private school tuition, summer camp expense, and other reasonable needs of the children also should be allocated based upon the parties' incomes. Pa.R.C.P. 1910.16-6(d). However, the comment to the rule states that "[t]he rule presumes allocation in proportion to the parties' net incomes consistent with the treatment of the other additional expenses." Pa.R.C.P. 1910.16-6 Cmt. (2005).

In the instant case, the trial court ordered Father to reimburse Mother for those three expenses. Order, 1/28/2014 at 2. Mother documented these expenses. N.T. at 115; Exh. P-10. Father also testified that he paid 80% of the tuition directly to the private school. N.T. at 175. Therefore, Father is correct that he is paying his proportionate share plus a share of Mother's proportionate share. Similarly, Father is correct that summer expenses are to be included in the $1,500 per month he pays for extra expenses. Order, 1/28/2014, at 3.

While there is a presumption that the expenses will be allocated proportionally to the parents' respective incomes, the trial court has discretion to vary that allocation. *See* Pa.R.C.P. 1910.16-6 Cmt. (2005). Unfortunately, the record is not clear whether the trial court concluded that Father should bear a disproportionate share of these expenses or merely misconstrued the record. The trial court did not address this issue directly in its opinion. Instead, the trial court stated that it ordered reimbursement to Mother for expenses that "were not paid by Father." T.C.O., 4/11/2014, at 4. However, Mother testified that Father paid most of the camp expenses, N.T. at 115, and essentially conceded that Father paid his share of the tuition directly to the school. N.T. at 175-76. Given this testimony, the record does not support the conclusion that Father did not contribute to these expenses. However, if the trial court was referring to Mother's share of the expenses, then it would be correct to call them expenses not paid by Father.

Ultimately, the trial court based its calculations upon the erroneous understanding of Father's income. Those percentages are likely to change once the trial court re-calculates Father's income. Because of the re-calculation and the uncertainty underlying the trial court's conclusions, we remand this issue as well. Based upon the preceding discussion, once the trial court re-calculates Father's income, the trial court shall either set the amounts owed based upon the re-calculated income percentages or clarify that it intends to vary the allocation based upon the circumstances of this case.

Mother's third and fourth issues also concern the children's extra expenses. Mother contends that the trial court erred by refusing to modify the December 2010 order for the extra $1,500 per month, because support is always modifiable. Mother argues that her expenses are unusually high because of M.H.'s autism diagnosis and attendant special needs, and because Mother has physical custody of the children for a majority of the time. Mother also contends that the trial court ignored evidence that Mother spends more than $1,500 per month in childcare and activities for the children. Mother's Brief at 18-24.

Mother also argues that these same issues warrant an upward deviation of Father's child support obligation. Mother contends that M.H.'s unusual needs, Mother's high personal debt, and Father's significantly higher income warrant a deviation. Mother's Brief at 25-29.

A trial court may deviate from the guideline support obligation based upon its consideration of the following:

> **(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:
>
> > (1) unusual needs and unusual fixed obligations;
> >
> > (2) other support obligations of the parties;
> >
> > (3) other income in the household;
> >
> > (4) ages of the children;
> >
> > (5) the relative assets and liabilities of the parties;
> >
> > (6) medical expenses not covered by insurance;
> >
> > (7) standard of living of the parties and their children;
> >
> > (8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and
> >
> > (9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5(b).

As noted, *supra*, while the extra reasonable expenses are to be allocated according to the percentages of the parties' incomes, the court has some discretion to vary its allocation. Mother submitted a list of her expenses for the children. Exh. P-8. Mother testified that her child care expenses were higher because her nanny stays in the home after Mother returns from work while Mother prepares dinner or to help with the two children. N.T. at 107. Mother stated that when she had the nanny, Mother would get home from work anywhere between 3:20 and 6:30 p.m.,

depending upon her work load. *Id.* at 112. Father testified that he paid all of children's medical expenses even though the December 2010 order allocated them. *Id.* at 140. Father also testified that he paid many out-of-pocket expenses for the children, such as shoes, coats, and haircuts. *Id.* at 141-42. Father submitted a list of his expenses for the children. Exh. R-7. The record demonstrates that both parents paid extra expenses for the children. Therefore, it was not an abuse of discretion for the trial court to conclude that the $1,500 per month increase was sufficient to allocate those expenses equitably.

Turning to Mother's request for a deviation, the trial court found that Father's $1,500 monthly supplemental payment was sufficient to cover additional expenses. T.C.O., 5/8/5014, at 9. The trial court cited the fact that Father pays for M.H.'s therapy sessions, which are the "biggest interventions needed" for M.H. *Id.* Further, the trial court indicated that any consideration of Mother's personal debt would have occurred when alimony was awarded. *Id.* The trial court adequately considered the factors, and based upon the record before it and the other adjustments it made, it did not abuse its discretion in refusing to grant a deviation.

Lastly, Mother claims that the trial court erred by not granting her an upward deviation based upon the amount of custody time that each party enjoys. Mother argues that the children spend only 19% of the time with Father, and as a result, an upward deviation is warranted. Mother's Brief at 24-25.

The Pennsylvania Rules of Civil Procedure provide for a downward deviation in child support obligations if the obligor exercises custody of the children over 40% of the time. Pa.R.C.P. 1910.16-4(c)(1). However, the rules do not explicitly provide for an upward deviation if an obligor were to exercise less custody. According to the explanatory comments, however, a court *should* consider upward deviation in cases in which an obligor has "little or no contact with the children." Pa.R.C.P. 1910.16-4 cmt. (2010). The comment also notes that the obligor's expenditures on the children are to be considered in awarding a deviation, and not merely overnights.

The trial court acknowledged that there is no rule that explicitly provides for an upward deviation. T.C.O., 5/8/2014, at 8. But it did not note the comment that directs a court to consider lack of custody time as a reason for a deviation. In the instant case, while the trial court should have considered the fact that Father exercises custody of the children only 19% of the time, Father has custody for a least part of every weekend and his custody time is more than the "little or no contact" contemplated by the 2010 comment. Additionally, as discussed *supra*, Father pays many of the children's normal expenses in addition to extra expenses. Therefore, we find that the trial court did not abuse its discretion by denying Mother's request for an upward deviation from Father's child support obligation based upon the parties' respective physical custody.

We remand the case for the re-calculation of Father's income that is to include his corporate salary. Thereafter, the court shall re-calculate his

support obligation. Because some expenses were allocated pursuant to the percentages of the parties' income, we also remand to allow the trial court to adjust those allocations based upon the new income calculation. The trial court may, in its discretion, take additional evidence to effectuate these ends.

Order reversed in part, affirmed in part. Remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Jenkins joins the memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/2015