J-A02019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| B.J.S., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.F.K. | : | No. 1106 MDA 2018 |

Appeal from the Order Entered June 8, 2018
In the Court of Common Pleas of Columbia County Domestic Relations at
No(s):  00306-DR-2009,
PACSES NO. 421111164

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 28, 2019**

Appellant B.J.S. ("Mother") seeks review of the child support Order dated June 8, 2018, which the Columbia County Court of Common Pleas entered after remand by this Court.  After careful review, we affirm.

A panel of this Court previously summarized the facts and procedural history of this case as follows:

Mother and Father married in 1999 and separated in 2009.  Two children were born during the marriage in 2002 and 2006.

In September 2009, Mother filed a complaint for child support and spousal support.  On November 4, 2009, Mother obtained a child support award in the amount of $1,005.12 per month.  The court did not award Mother spousal support.

In early 2015, Mother filed a petition for modification.  On December 17, 2015, a master held a hearing during which Mother presented testimony regarding unreimbursed medical and tutoring expenses.  Father testified about his income from wrestling camps that he operated and defended discrepancies

between his total bank deposits and the income he claimed in his federal taxes. Father attributed the discrepancies to money he earned from investments and contributions by his paramour, L.C., to a shared credit account. On March 24, 2016, the master held a second hearing in which Mother and Father provided further detail regarding their income and child-related expenses.

On March 31, 2016, the master authored a recommendation and report awarding Mother child support of $764.68 per month. The master calculated this award using an agreed-upon monthly earning capacity for Mother of $2,164.70. The master determined that Father's monthly earning capacity was $5,096.92 by averaging his Schedule C net income for 2013, 2014 and 2015. Utilizing the support guidelines, the master arrived at a child support award of $955.98 per month, which it deviated downward pursuant to Pa.R.C.P. 1910.16–5 due to substantial other income in Mother's household provided by her current husband, G.S. The master made an additional twenty percent reduction pursuant to Pa.R.C.P. 1910.16–4(c) due to Father's significant period of partial custody.

Mother filed exceptions to the master's recommendation and report, and by order dated July 25, 2016, the trial court denied and dismissed her exceptions. The court adopted the master's report and confirmed the previously calculated child support award. Mother appealed to this Court at 1293 MDA 2016. Mother filed a brief in this Court; Father did not.

By Memorandum dated May 4, 2017, this Court vacated the CCP's July 25, 2016 Order and remanded for the trial court to recalculate Appellee's net income and support obligation. *B.J.S. v. D.F.K.*, 1005 MDA 2017, at 2-3 (Pa. Super. filed Apr. 20, 2018); *B.J.S. v. D.F.K.*, No. 1293 MDA 2016 (Pa. Super. filed May 4, 2017).

On May 19, 2017, in response to our remand, the trial court entered an Opinion and Order, summarized as follows:

The trial court stated that our decision required it to determine the amount of Father's investment income and wrestling camp

- 2 -

earnings. The court confined its analysis of these issues to the transcripts from the December 17, 2015 and March 24, 2016 hearings and documents admitted into evidence during these hearings. It declined to admit other documentary evidence, such as bank statements that Mother's attorney used to cross-examine Father.

With regard to Father's investment income, the court placed heavy weight on (1) Father's 2014 tax return, which reported $750.00 as dividend income and $14.00 as capital gain income, totaling $764.00 and (2) Father's 2015 tax return, which reported no dividend or capital gain income. The court also summarized Father's testimony concerning his investment income as follows:

> Father testified that he had "other investments" and stated that he transfers these investments through his checking accounts. When referring to these "other investments," Father was not asked, nor did he state, the income level or principal value of those particular investments. Father explained that he handles his mother's investments, and that these investments were "underperforming" and he and his mother "decided to do something about it. We closed it and she sent the money down to me and I'm going to invest it down here in this area." This asset was in Father's name since about 1993 or 1994, during which time he was married to Mother. Father testified that he intended to keep this asset for [his] mother and not liquidate it. This amount was reflected in a deposit of $26,661.13 on Father's September 30, 2015 bank statement of which half was Father's. In attempting in good faith to explain deposits into his account two (2) years after the fact with no preparation, Father testified: "I may have liquidated some investments—moved them into my account and reinvested them. Stuff like that . . . I don't know. I am thinking liquidating other investments."
>
> That is the extent of the record expressly dealing with "investment income."

Trial Ct. Op. 5/19/17, at 7-8.[1]

The trial court "accept[ed] as credible and of greatest weight the information on Father's tax returns." *Id.* at 8; *see also id.* at 6 (Father's tax returns were credible "given the reliable regularity of reporting interest, dividends and investment sales via Form 1099's and the penalties for not reporting same"). The court thus found Father's investment income to be $764.00, or $63.67 per month.

With regard to wrestling camp income, the trial court determined that Father made net income before taxes of $1,143.00 in 2014 and $696.00 in 2015. The court found that the drop in net income was the result of market conditions, not Father's voluntary choice, so it set Father's earning capacity for wrestling camp income at the 2015 level of $696.00 per year, or $58.00 per month.

Adding Father's monthly investment income and monthly wrestling income together, the court raised Father's monthly earning capacity by $112.67, from $5,096.92 to $5,218.59. The court stated:

> No matter how one computes it, the record does not support a conclusion by this fact finder (given consideration of the totality of the record, consideration of only that evidence which we find to be credible and according evidence deemed to be credibie the weight we

_____

[1] In another passage, the court described Father's testimony as credible and attributed his inability to remember bank deposits to the passage of time:

> Father ran all gross receipts from his business, all business expenses and all personal disbursements in and out of his checking account. It is beyond fairness to show someone in business their checking account statement for a given month two years prior and to expect them to recollect with complete certainty the nature of a particular deposit at that time.

*Id.* at 2 n.1.

> deem it to deserve[]) that Father made $141,617.00 in deposits in 2014 . . . These deposits are not accepted as credible proof, nor proof of any significant weight, of Father's "investment income."

**Id.** at 5.

* * *

> Utilizing the support guidelines, the trial court calculated Father's child support obligation as $1,033.01 per month, which it reduced by ten percent to $929.71 per month. **Id.** at 11.

**B.J.S.,** 1005 MDA 2017, at 6-9.

Mother again appealed. On August 1, 2017, the trial court filed both a Rule 1925(a) Opinion and a Supplemental Rule 1925 Opinion.

On April 20, 2018, this Court quashed the appeal, concluding that the trial court did not have jurisdiction to enter its May 19, 2017 Order because the record had not yet been returned from our Court.[2]

On June 8, 2018, the trial court issued an Opinion and Order incorporating its May 19, 2017 and August 1, 2017 Opinions, and the analysis in its Order filed September 18, 2017.[3] The trial court then modified its March 31, 2016 Order, setting child support at $929.71 per month, plus $30 per

---

[2] Notwithstanding the quashal, the panel nonetheless "offered several points that the trial court *might* consider during further proceedings," after correctly recognizing that this Court "cannot direct the trial court on what support decision to reach, for that would usurp the trial court's role as factfinder." **B.J.S.**, 1005 MDA 2017, at 16-18 (emphasis added).

[3] In its September 18, 2017 Order, the trial court incorporated its Custody Order dated June 30, 2014 into the record and explained its August 10, 2017 Supplement Rule 1925(a) Opinion.

month on the arrears, if any, and apportioning tutoring expenses and unreimbursed medical expenses. The court otherwise affirmed its March 31, 2016 Order, and made this new order effective as of March 13, 2015, the date Appellant filed the Petition for Modification at issue.

Mother appealed and filed a Pa.R.A.P. 1925(b) Statement. She raises the following issues in this appeal:

> I. Whether the trial court abused its discretion by failing to strictly follow the Superior Court's order to vacate the court of common pleas' order dated July 25, 2016 and to include all [of Father]'s income including investment income and wrestling camp income which has been calculated to be $141,617.83, as directed, when calculating [Father]'s child support allegation.
>
> II. Whether the trial court erred in awarding a substantial custody deviation in this case in light of the lower court's order granting the inclusion in the record of the July 1, 2014 and June 1, 2015 custody orders which clearly demonstrates that [Father] does not exercise 40% or more of the custody of the minor children.
>
> III. Whether the trial court erred in awarding a child care deviation in this case as it is not supported by any evidence presented and it is unreasonable to award a deviation for child care for children of this age.
>
> IV. Whether the trial court erred when it failed to award unreimbursed medical expenses for the children, which were preserved by [Mother] by presenting the unreimbursed medical expense evidence to the Columbia County Domestic Relations Office.

Mother's Brief at 5.

Appellate review of a child support order is very narrow. We may reverse a support order only if we find that the Order cannot be sustained on any valid ground. *Krebs v. Krebs*, 944 A.2d 768, 772 (Pa. Super. 2008).

This Court "will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order." **Id.** (citation and quotation omitted). "An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." **Arbet v. Arbet**, 863 A.2d 34, 39 (Pa. Super. 2004) (citation and quotation omitted). Importantly, we acknowledge, "the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests." **Id.** (citation and quotation omitted).

In her first issue, Mother avers that, on remand from this Court's May 4, 2017 decision, the trial court refused to follow this Court's directives and improperly calculated Father's interest income and income from the wrestling camp. Mother's Brief at 14. Appellant's sole specific claim of error in the appeal before us is that the trial court "went so far as to include numbers for investment income that were not testified to but were merely plucked from a portion of a tax return submitted by [Father.]" **Id**. at 14.

After providing a detailed chart citing to the Notes of Testimony summarizing the evidence pertaining to Father's deposits that was actually admitted, the court noted that Father's 2014 Form 1040, admitted as Ex. D-

5, showed investment income of $750.00 in dividend income and $14.00 in capital gains income. In crediting this evidence, the trial court stated:

> Given the reliable regularity of reporting interest, dividends and investment sales via Form 1099's and the penalties for not reporting the same, this "investment income" is accepted as credible. Banks and brokers are extremely regular and accurate in their reporting of investment income via 1099's, and 1099's are transmitted to the taxpayer and the IRS. In today's business world, production of 1099's is computerized, at least by banks and brokerage houses. A taxpayer would be extremely foolish to think he or she could omit reporting investment income which was reported by a bank or a broker to the IRS via a 1099. The IRS computers know before a taxpayer files his or her return what level of 1099 gross revenue the taxpayer earned, because banks, brokers and contractors paying more than $600.00 compensation per year must send a Form 1099 to the taxpayer and the IRS on or before January 31st of each year. Father testified that his 2014 Form 1040 (Ex. D-5) was accurate [ ] and that testimony is also accepted as credible. All of this combined renders Father's reporting of his investment income on his tax returns highly credible. If Father's mother gifted Father income from investments which were in her name, and which were taxed to her, that would not be income to Father, because "gifts are not income for support purposes." **Suzanne D. v. Stephen W.**, 65 A.3d 965, 972 (Pa. Super. 2013).
>
> * * *
>
> . . . As to "investment income," this court accepts as credible and of greatest weight the information on Father's tax returns. Taking the full $750.00 of dividend income and $14.00 of capital gain income on the 2014 return, there was a total of $764.00 of investment income in 2014. This will be attributed to Father as his gross annual "investment income."

Trial Ct. Op., 5/19/17, at 7-8.

In its June 8, 2018 Opinion, the trial court further emphasized its prior review of the "credible amounts of Father's various forms of net income, business as well as investment income," and noted that it was Mother's burden

of proof to show that Father had high levels of investment income. Trial Ct. Op., 6/8/18, at 3-4. The court found that Mother did not subpoena or enter into the record "Father's bank statements, deposit slips or cancelled checks, all of which could establish the sources of the funds deposited, the destination of funds disbursed, the amount of principal invested and the amount of income derived, if any. She did not sustain her burden of proof in this factfinder's view." *Id*. at 4 n.3.[4]

We discern no abuse of discretion in the trial court's reliance on Father's tax returns to determine investment income. The court found the tax returns credible, found Father's testimony credible, and weighed the properly admitted evidence to reach its conclusion that Father's net income calculation should be increased by $764.00 to account for investment income. We cannot and will not reweigh the evidence. Moreover, Mother has provided no argument to support a conclusion that the trial court overrode or misapplied the law, and the record does not show that the trial court's judgment was "either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *Arbet*, *supra*. Accordingly, Mother's first issue warrants no relief.

_____

[4] In addressing the "suggestion" provided in this Court's April 20, 2017 Quashal Order that the trial court consider opening the record, the trial court observed that, as a proper exercise of its discretion, it had denied a request for a supplemental hearing by Order dated June 21, 2017, because "[t]o open the record would have opened the case to re-litigation," and "unfairly allow [Mother] a second bite at the apple." Trial Ct. Op., 6/8/18, at 5. "This is … one of the significant reasons why a supplemental hearing is not deemed to be just in this court's discretion." *Id*. at 4 n.4. We see no abuse of discretion in the trial court's decision.

In her second issue, Mother contends that the trial court erred in concluding that Father had physical custody of the children for over 40% of the time, when the 2014 custody order allows Father to exercise only 29% physical custody.

The support guidelines provide that an obligor may be entitled to a reduction in his child support payments "[w]hen the children spend 40% or more of their time during the year" with that parent. Pa.R.C.P. 1910.16-4(c). Where a parent presents evidence that he enjoys substantial physical custody, "a rebuttable presumption arises that the obligor is entitled to a reduction in the basic support obligation to reflect this time." *Id*.

This Court addressed this issue in the May 4, 2017 Memorandum, after noting that the custody order upon which Mother relied for her calculation had not been entered into evidence or otherwise appended to the record.[5]  We

_____

[5] Because this Court previously addressed this issue in our May 4, 2017 Memorandum, the law of the case doctrine arguably applies to preclude our review of this issue before us. *See Windows v. Erie Ins. Exch.*, 161 A.3d 953, 959 (Pa. Super. 2017) ("The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter.") (citations omitted)).  However, we are mindful that "[i]n determining whether the law of the case doctrine applies, the appellate court 'looks to where the rulings occurred in the context of the procedural posture of the case.'" *Id*., quoting *Mohney v. Am. Gen. Life Ins. Co.*, 116 A.3d 1123, 1132 (Pa. Super. 2015) (citation omitted). In light of the trial court's grant of Mother's Application to Correct the Record to allow for the inclusion of the June 30, 2014 Custody Order subsequent to our May 4, 2017 Memorandum, we decline to apply the law of the case doctrine to preclude our review in the instant appeal.

noted that "since the trial court's determination was supported by Father's credited testimony, Mother is not entitled to relief." **B.J.S.**, 1293 MDA 2016, at 7-8.

On September 18, 2017, the trial court granted Mother's Application for Correction or Modification of Record to the extent of incorporating the Custody Order dated June 30, 2014, into the record, the order in effect when the Master and trial court considered the instant Modification Petition. In its September 18, 2017 Order, the trial court noted that "paragraph 3.h of the [Custody] Order of June 30, 2014, accorded [Father] additional time as 'may be mutually agreeable by the parties,' and that the undersigned found as a fact that the parties did mutually agree to more time to the extent that [Father] received the children 43.5% of the time." Order, 9/18/17. The court concluded that "[i]n view of this finding of fact, and the text of paragraph 3.h, [Mother's] argument that the custody order mandated an allocation of 40% of time to the Defendant is inaccurate." **Id**.

Mother's sole contention in this appeal is that there was "absolutely no testimony that the parties exercised custody outside the custody order," and the "testimony from the hearing demonstrates that the parties and the special Master were all in agreement that the custody percentage should be determined by use of the July 1, 2014 custody order."[6] Mother's Brief at 18. In support, Mother provides a short excerpt from the testimony at the

---

[6] The date of the custody order is actually June 30, 2014. **See** Custody Order, R.R. at 310a.

modification hearing where Mother's attorney objected to Father's agreement that "[u]nder the current [custody] order and going through the school calendar, [he has] the children 43 and a half percent of the time." *Id*. at 19 (citing N.T.).[7] Mother then quotes paragraph 3(a) and (b) of the June 30, 2014 Custody Order regarding Father's weekend and summer custody allocation, and concludes Father has 29% physical custody.[8] *Id*. at 20. Mother's sparse arguments garners no relief.

Following our remand, which the trial court correctly observed did not include a direction that the court reconsider the custody allocation, the trial court opined as follows:

> This court's finding of fact was that the child does, in fact, spend 43.5% of his time with Father, regardless of the custody order, however, [Mother] ignores paragraph 3.h of the custody order of June 30, 2014[,] which accorded Father additional time as "may be mutually agreeable by the parties." . . . The time actually spent with Father, even if in excess of the time allocated to him under paragraphs 3.a through 3.g of the Order, is permitted under paragraph 3.h of the Order.

Trial Ct. Supplemental Opinion, dated Aug. 1, 2017, at 1.

_____

[7] Mother's objection was that Father was drawing a "legal conclusion" and providing "incorrect math," and asked the hearing officer to look at the June 30, 2014 custody order that apparently was not included in the documents presented at the support hearing, to "rerun [the calculation] to see percentage of time." N.T., 12/17/15, R.R. at 25a.

[8] The Custody Order granting physical custody to Father is provided in paragraph 3, subsections (a)-(h), not just (a)-(b). *See* Custody Order, dated June 30, 2014, at R.R. 310a-311a.

Mother's argument does not acknowledge paragraph 3.h of the Custody Order, and does not provide this panel with any reason to change our prior conclusion that because "the trial court's determination was supported by Father's credited testimony, Mother is not entitled to relief." ***B.J.S.***, 1293 MDA 2016, at 7-8. Accordingly, no relief is due.

In her third issue, Mother challenges the allocation of childcare costs to Father. This Court previously addressed this issue and concluded that because Mother did not file exceptions challenging the Master's calculation of childcare expenses, she waived this issue. ***See B.J.S.***, ***supra*** at 5, citing ***Lawson v. Lawson***, 940 A.2d 444, 450 (Pa. Super. 2009) and Pa.R.C.P. 1910.12(f) ("Matters not covered by exceptions are deemed waived[.]").

Mother's reassertion of this issue in the instant appeal does not change the fact that she did not file exceptions as required in order to preserve it. It is, thus, still waived. Moreover, the law of the case precludes our review of this issue. ***Windows v. Erie Ins. Exch.***, ***supra*** at 959.

In her fourth issue, Mother contends the trial court "erred when it failed to award unreimbursed medical expenses for the children." Mother's Brief at 22. She contends, in one conclusory sentence without development or citation to any evidentiary support or legal authority, that "Father is responsible for 81.27% of the unreimbursed medical expenses after Mother pays the first $250.00 per child." ***Id***.

This Court has repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review. **Harris v. Toys "R" Us–Penn, Inc.,** 880 A.2d 1270, 1279 (Pa. Super. 2005); Pa.R.A.P. 2119. Mother's failure to develop this issue renders it waived.

Moreover, Mother fails to acknowledge this Court's previous conclusion that she waived this issue for failing to raise an exception before the Master. **See B.J.S.**, 1093 MDA 2016, at 5. In addition, Mother fails to address the fact that, notwithstanding this Court's finding of waiver, the trial court on remand **did** allocate medical expenses. **See** Trial Ct. Opinion and Order, dated 6/8/18, at 7.[9] Mother's failure to acknowledge the subsequent Order, combined with her failure to provide any argument whatsoever, renders her challenge to the court's allocation of unreimbursed medical expenses waived.

In sum, having found Mother's issues to be without merit or waived, we affirm the Order.

Order affirmed.

---

[9] That Order provided that unreimbursed medical expenses for the children that are in excess of $250.00 per year per child "shall be allocated 64.13% to Father and 35.87% to Mother." Trial Ct. Opinion and Order, dated June 8, 2018, at 6.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/28/2019